IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR No.: 3:14-604-JFA |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| SAMUEL RICHARDS | ) | |
| | ) | |

This matter is before the court on the defendant's *pro se* motion for a reduction in his sentence pursuant to the First Step Act of 2018[1] and 18 U.S.C. § 3582(c)(1)(A) (ECF No. 2578).[2] Seeking compassionate release, the defendant states that the threat posed by the ongoing COVID-19 pandemic, coupled with his current medical problems, constitute extraordinary and compelling reasons for his immediate release.

The government has responded in opposition, arguing that the defendant has not shown an extraordinary and compelling reason for release. Additionally, the government asserts that the statutory sentencing factors under 18 U.S.C. § 3553(a) do not weigh in favor of the defendant's release. The defendant replied to the government's response.

The court has carefully considered the record before it and conducted an individualized analysis of the facts and issues raised by the parties. For the reasons which follow, the defendant's motion is respectfully denied.

---

[1] Pub. L. 115-015 (S. 756), 132 Stat. 015 (Dec. 21, 2018).

[2] The defendant's first motion for compassionate release (ECF No. 2562) was denied without prejudice for failure to exhaust administrative remedies.

1

STANDARD OF REVIEW

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *See United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *See Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, § 3582(c)(1)(A)(i) provides a statutory vehicle to modify a defendant's sentence. It was originally adopted as part of the Sentencing Reform Act of 1984.

On December 21, 2018, the First Step Act was signed into law. Broadly, the Act's goals are to reform federal prisons and sentencing laws to reduce recidivism, decrease the federal inmate population, and maintain public safety. The First Step Act also expanded the existing compassionate release provisions of federal law by allowing an inmate to move for compassionate release himself, rather than allowing only the Director of the Bureau of Prisons (BOP) to do so. The relevant portion of the First Step Act, codified at 18 U.S.C. § 3582(c)(1)(A), as amended by § 603(b) of the First Step Act, provides:

> [T]he court, . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the

>factors set forth in section 3553(a) [of Title 18] to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

By its terms, § 3582(c)(1)(A) permits the court to reduce the defendant's term of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if the court first finds that (i) extraordinary and compelling reasons warrant such a reduction; and (ii) such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. In addition, a district court may not grant a sentence reduction under § 3582(c)(1)(A) without considering the § 3553 factors to the extent they are applicable. *United States v. Kibble*, 992 F.3d 326, 332 (4th Cir. 2021).

In *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit agreed with the Second Circuit in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) and found that there is, as of now, no "applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A)." As a result, district courts are "empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise." *McCoy*, 981 F.3d at 284 (citing *Brooker*, 976 F.3d at 230); *see also, Kibble*, 992 F.3d at 331.

A defendant's rehabilitation standing alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t). Also, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. *United States v. Jones*,

3

836 F.3d 896, 899 (8th Cir. 2016).

When deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A), a district court generally proceeds in three steps. *See United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). First, the court determines whether "extraordinary and compelling reasons" support a sentence reduction. Next, the court considers whether a sentence reduction is consistent with applicable policy statements issued by the Sentencing Commission. As noted previously in this order and as set out in *McCoy*, because there is no applicable policy statement governing compassionate release motions filed by defendants under the recently amended § 3582(c)(1)(A), district courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise. Finally, if the court finds that extraordinary and compelling reasons warrant relief, the court must consider the § 3553(a) factors in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment.

Even if the defendant meets the eligibility criteria for compassionate release, this court retains discretion as to whether to grant relief. *See* 18 U.S.C. § 3582(c)(1)(A) (providing the court *may* reduce the term of imprisonment) (emphasis added).

*Exhaustion of Administrative Remedies*

Before a court may consider a defendant's motion for compassionate release, the defendant must have completed the initial step of requesting that the BOP bring a motion on their behalf. The defendant may file a motion with the court after (1) fully exhausting all administrative rights to appeal; or (2) after the lapse of 30 days from the receipt of such a

request by the warden of the defendant's facility, whichever is earlier. 18 U.S.C. § 3582(c)(1)(A). *See United States v. Muhammad*, 16 F.4th 126, 129 (4th Cir. 2021).

The government suggests that the defendant has not fully exhausted his remedies before the BOP. The defendant responds that he has, in fact, exhausted his administrative remedies. The documentation attached to the defendant's response shows that he asked the Warden for "home confinement" in a written submission filed on January 22, 2021. When this was denied by the Warden, the defendant filed a notice of his "objection" to the decision on January 27, 2021, noting that he had filed a motion for compassionate release. The Warden responded to this objection on March 17, 2021 by suggesting to the defendant that it was a motion for home confinement, not a motion for compassionate release, that had been addressed.

On this record, the court is convinced that requiring additional exhaustion by the defendant at this time would be futile and the court will proceed to decide the motion on its merits.

DISCUSSION

The mere existence of the COVID-19 pandemic—which poses a threat to every non-immune individual in the world—cannot independently provide a basis for a sentence reduction or justify compassionate release. However, COVID-19 is certainly relevant to the court's analysis of a § 3582(c)(1)(A) motion for compassionate release. If a defendant has a chronic medical condition that has been identified by the Centers for Disease Control (CDC) as elevating the inmate's risk of becoming seriously ill from COVID-19, it is possible

5

that such medical condition could satisfy the extraordinary and compelling reasons standard. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

Rather, the threshold questions are whether the defendant has a particularized risk of contracting COVID-19 in prison and whether his or her medical conditions render them particularly susceptible to severe illness or death should he or she contract the virus. *See United States v. Youngblood*, 858 Fed. Appx. 96, 98 (4th Cir. 2021) (citing *United States v. High*, 997 F.3d 181, 185 (4th Cir. 2021)).

*The Defendant's Motion for Compassionate Release*

In his motion (ECF No. 2578), the defendant contends that his current medical conditions, combined with the ongoing COVID-19 pandemic, constitute extraordinary and compelling reasons for his immediate release from incarceration. Specifically, he contends that he suffers from hypertension and obesity, with a Body Mass Index between 40.0 and 44.9.[3] He reports that he contracted COVID-19 in December 2020 and that he "still hasn't fully recovered from COVID-19." He notes that after the BOP physician reviewed his medical condition, "the physician conferred that the defendant would be better served at home than at FCI Bennettsville." The defendant has been vaccinated for COVID-19.

---

[3] It bears mention that the defendant's Presentence Report (PSR) (ECF No. 1236 at ¶63) prepared in June 2016, indicates that "the defendant describes his overall physical health as good." It thus appears that the physical maladies about which the defendant complains have arisen during his incarceration.

The CDC has identified both obesity and hypertension as conditions that might be severely impacted by the COVID virus.

Accordingly, over the government's strong objection, this court concludes that the defendant's medical conditions, together with the COVID-19 pandemic, demonstrate an extraordinary and compelling reason for consideration of release.

Under Fourth Circuit guidance, this court will now make an individualized assessment of the defendant's case, with specific attention to the factors under 18 U.S.C. § 3553(a), and also with particular review of the defendant's post-sentencing conduct while incarcerated.

Taking the § 3553(a) factors in order, the court finds as follows:

1. *Nature and Circumstances of the Offense.* The defendant was one of 32 defendants named in a 1-Count Superseding Indictment charging conspiracy to possess with intent to distribute 5 kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 851.

The government filed an Information (ECF No. 608) pursuant to 21 U.S.C. § 851, notifying the defendant that he was subject to increased penalties based on the following prior convictions: (A) August 1997 — manufacturing, distribution, etc., ice/crank/crack cocaine 1st. S.C. General Sessions Case No. 95GS3801841; sentenced to 5 years and $5000.00, suspended to 2 years probation; (B) October 2008 — federal conviction for possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(d) (Count 1) and possession of a firearm by a felon (Count 3), U.S. District Court for the District of South Carolina, CR No. 2:07-cr-00737-PMD; sentenced to a total term of

1 year and 1 day; consisting of 1 year and 1 day as to each of Counts 1 and 3, to run concurrently.

The Presentence Report (PSR) (ECF No. 1236) prepared by the United States Probation Office determined that the defendant faced a mandatory minimum sentence of life. His criminal history category was II and his total offense level was 29, yielding a Guideline sentencing range of 97 to 121 months incarceration. However, as the statutorily minimum sentence of life was greater than the maximum of the applicable Guideline range, the Guideline became life imprisonment pursuant to U.S.S.G. § 5G1.1(b). He was also sentenced to a 10-year term of supervised release.

Moreover, as indicated above, two of the defendant's prior convictions qualified as predicate offenses for purposes of 21 U.S.C. § 851, thus resulting in the mandatory life sentence.

The defendant did not appeal his conviction or sentence.

Shortly after his arrest, the government moved for a reduction in the defendant's sentence. This court granted the motion and reduced the defendant's sentence from mandatory life to 121 months. This was a substantial reduction in the defendant's sentence and is perhaps the largest departure the court has awarded in 35 years on the bench.

The defendant's crime of conviction was of a very serious nature. He pleaded guilty to being a member of a conspiracy involving the distribution of 5 kilograms or more of cocaine. He had two prior convictions for felony drug offenses which at the time required a mandatory life sentence.

2. *History and Characteristics of the Defendant.* The defendant was 39 years of age when sentenced in this case. He is currently 45 years of age. According to the South Carolina Statutory Table of Mortality, S.C. Code Ann. § 19–1–150, the defendant's life expectancy, at the time of sentencing, was 39.27 additional years. The 10-level departure issued by this court in April 2018 had the effect of reducing his sentence by nearly 80%.

The defendant was one of five children born to married parents and he has four siblings. He reported having a good childhood and denied any history of substance abuse or domestic violence in the family home. He received a high school diploma. He has been married and is the father of one child. He operated a night club in South Carolina for 10 years and has prior employment as a painter.

*Post Sentencing Conduct*

The defendant has one disciplinary infraction in 2016 on his record while at the BOP for "refusing to obey an order." He has taken a total of 25 vocational and educational courses including such varied topics as community transition, money smart, parenting, forklift basics, finance, credit use, and living free. The defendant notes that he successfully completed the BOP's 500-hour drug program in 2018.

The defendant's motion suggests that if he is released to home confinement, he plans to return home to his 82-year-old father to assist him on a daily basis. The defendant also plans to use his Commercial Drivers License (CDL) for employment at a company in Summerton, South Carolina.

The defendant is scheduled to be released in December 2022. He is presently located at FCI Bennettsville. The defendant has not advised the court when he will be placed in a Residential Reentry Center which is generally prior to the last 6 months of incarceration.

3. *Seriousness of the Crimes*. As evidence by the historical facts set out in the PSR involving the defendant's instant conviction, this court regards the defendant's crime as very serious, fully supportive of a significant sentence.

4. *Whether the Sentence Promotes Respect for the Law and Just Punishment for the Offense*. The court finds a significant sentence is necessary to promote respect for the law and just punishment.

5. *Whether the Sentence Affords Adequate Deterrence to Criminal Conduct*. The court finds that a significant sentence is necessary to provide both general and specific deterrents.

6. *Whether the Sentence Protects the Public from Future Crimes of the Defendant.* The court finds that a significant sentence is necessary to protect the public from future crimes of the defendant. The court views this as an important factor to be addressed in considering the present motion. This is perhaps one of the most important factors counseling against the defendant's immediate release. The defendant was responsible for being involved in a conspiracy involving the distribution of a significant quantity of cocaine.

7. *Need to Avoid Unwarranted Disparity*. Viewing the defendant's sentence as compared with the culpability of the defendant and his associates, his imposed sentence was and is in line with the other co-defendants.

*Additional Arguments Raised by the Defendant*

The defendant raises additional arguments which must be addressed by the court. First, he contends that he has "successfully worked his way down to the lowest custody level possible." He also contends that he "now resides at a camp which classifies him as out-custody." He thus contends that he is of no threat to the community because he already has access to the community and has maintained a "perfect disciplinary record." As noted above, however, the defendant does in fact have one disciplinary infraction for refusing to obey an order in 2016. The fact that the defendant has a low security classification at the present time is of significance, but not significant enough to warrant an order from this court directing the defendant's immediate release. The defendant has obviously adjusted well while at the BOP, and has successfully lowered his custody level. He is on track to be released at the end of 2022. However, these factors, standing alone, do not justify an order of this court requiring immediate release that would shortcut the BOP's carefully laid out transition program for reentry into society. In short, the court is aware of these arguments, but respectfully rejects them.

CONCLUSION

For the foregoing reasons, the court determines that, although the defendant has demonstrated an extraordinary and compelling reason for his release due to his medical conditions, his release at this time is not appropriate in light of this court's individualized assessment of the § 3553(a) factors, including the defendant's post-sentencing conduct. The defendant received a generous departure from his life sentence and is scheduled to be

released in the very near future. The motion is respectfully denied.[4] (ECF No. 2578).

    IT IS SO ORDERED.

February 28, 2022  
Columbia, South Carolina

*Joseph F. Anderson, Jr.*  
Joseph F. Anderson, Jr.  
United States District Judge

---

[4] To the extent that the defendant seeks to have this court direct the BOP to place the defendant in home confinement, this court is without authority to do so. The discretion to release a prisoner to home confinement lies solely with the Attorney General. See 18 U.S.C. § 3624(c)(2); 34 U.S.C. § 60541(g). The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this. See CARES Act, Pub. L. No. 116-136, 134 Stat 281, 516 (2020) ("During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau [of Prisons], the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.")